**United States District Court**
For the Northern District of California

1  `
2
3
4
5                     UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7                          EUREKA DIVISION
8
9  COLDWELL BANKER REAL ESTATE LLC,          No.  4:13-CV-04732 SBA (NJV)
   a California limited liability company,
10                                            REPORT AND RECOMMENDATION RE
                    Plaintiff,                PLAINTIFF'S MOTION FOR DEFAULT
11                                            JUDGMENT
        v.
12                                            (Doc. 17.)
   DC PROPERTY & LOANS, INC., a California
13 Corporation; LOUIE T. LO, an individual; and
   JOSE C. YEE, an individual,
14
                    Defendants.
15 _____/
16
17                          **INTRODUCTION**
18         Defendants DC Property & Loans, Inc. ("Defendant DCP") and Jose C. Yee entered into a
19 Franchise Agreement and Guaranty of Payment and Performance with Plaintiff Coldwell Banker
20 Real Estate LLC ("Coldwell Banker").  Defendants breached the Franchise Agreement and
   Guarantee of Payment and Performance and as a result, Coldwell Banker terminated the Franchise
21 Agreement.  Despite the termination of the Franchise Agreement, Defendants continued to use the
22 Coldwell Banker® Marks without authorization from, or payment to, Coldwell Banker.  Coldwell
23 Banker filed this action, alleging, *inter alia*, breach of contract, breach of guaranty, and trademark
24 infringement.  (Doc. 1.)  When Defendants did not respond to the complaint, Coldwell Banker
25 moved for entry of default against DC Property & Loans, Inc. and Jose C. Yee, and voluntarily
26 dismissed Defendant Louie T. Lo.  Docs. 12-15.  The Clerk entered the defaults and Coldwell
27 Banker subsequently moved for default judgment.  Docs. 10-14, 17.  The district court referred the
28 motion for default judgment to the undersigned.  Doc. 19.

For the reasons set forth below, the undersigned will recommend that the district court GRANT Coldwell Banker's motion for default judgment in part and enter default judgment against Defendants DC Property & Loans, Inc. and Jose C. Yee.

**BACKGROUND**

The Franchise Agreement

Defendant DCP entered into a Coldwell Banker Real Estate Franchise Agreement that contained an effective date of February 16, 2004 ("the Franchise Agreement"). (Doc. 17-3, Bertet Decl., Ex. A.) Pursuant to the Franchise Agreement, Defendant DCP became a franchisee of Coldwell Banker as a real estate brokerage business. The location of this franchise was 2171 Junipero Sierra Blvd. Suite 710, Daly City, California 94014. Defendant Yee entered into an Addendum to Franchise Agreement that contained an effective date of January 7, 2009, wherein Yee became a fifty percent owner of the franchise. (Doc. 17-3, Bertet Decl., Ex. B.)

Pursuant to the terms of the agreement, Coldwell Bank agreed to grant a non-exclusive license to Defendant DCP to utilize the Coldwell Banker® Marks and the Coldwell Banker® System. In return, Defendant DCP agreed to: (1) pay Coldwell Banker six percent of all the gross revenues under Section 7.2 of the Franchise Agreement ("royalty fees"), and (2) pay two and one half percent of its gross revenue for a National Advertising Fund ("NAF") for advertising fees under Section 8.2 of the Franchise Agreement, with a minimum monthly NAF fee as specified in the Franchise Agreement[1]. In addition, Defendant DCP was to report on closed transactions each month.

After entering into the Franchise Agreement, Defendants failed to pay franchise fees, which constituted a breach of the Franchise Agreement.

The Guaranty

Defendant Yee signed a Guaranty of Payment and Performance ("the Guaranty"). Yee thereby personally guaranteed the payment and performance of Defendant DCP's obligations under the Franchise Agreement. (Doc. 17-3, Bertet Decl, Ex. A, p. 35.)

---

[1]Collectively, items 1 and 2 are referred to herein as "Franchise Fees"

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Promissory Note

　　After entering into the Franchise Agreement, Defendant DCP, as Maker, and Defendant Yee, as Co-Maker, executed a Development Advance Promissory Note on or about March 24, 2004, promising to pay Coldwell Banker, as Holder, $86,000.00 ("Promissory Note").  (Doc. 17-3, Bertet Decl., Ex. C.)  The Promissory Note provided that Coldwell Banker could determine that Defendants are in default and accelerate the unpaid principal and all accrued interest on the Promissory Note, making the entire balance immediately due and payable, without presentment for payment or any notice or demand, "upon termination or expiration of any agreement between Maker and Holder or any of Holder's related companies, including, but not limited to, any of the Franchise Agreements." (*Id*. at 2:12-14.)

Use of Coldwell Banker Marks

　　Paragraph 14.3 of the Franchise Agreement, entitled "Discontinuance of the Franchised Business" sets forth Defendants' obligations in the event of termination of the Franchise Agreement, including: (1) not directly or indirectly at any time or in any manner identifying themselves or their business as a current or former franchise of Coldwell Banker; (2) not using any of the Coldwell Banker® Marks or any imitation thereof; (3) canceling fictitious name registrations related to Defendants' use of the COLDWELL BANKER® Marks; (4) giving written notice to the telephone company and all telephone directory publishers of the termination of Defendants' right to use the COLDWELL BANKER® Marks in connection with any telephone number or listing; and (5) immediately discontinuing use, for any purpose, of all signs, advertising materials, and other materials or supplies which display or include the COLDWELL BANKER® Marks.  (Doc. 17-3, Bertet Decl., Ex. A, p. 23-24.)

　　After the Franchise Agreement was terminated, Defendants failed to cease and desist further use of the COLDWELL BANKER® Marks.  Attached to the declaration of Marc Fischman is copy of the Post Termination Site Inspection Report dated June 23, 2011, for the Formerly Approved Location, showing that Defendants were continuing to use COLDWELL BANKER® Marks, including but not limited to yard signage depicting the COLDWELL BANKER® Marks and name, MLS listings and marketing materials using the COLDWELL BANKER® Marks, and stationary

**United States District Court**
For the Northern District of California

1  and business cards reflecting the COLDWELL BANKER® name.  (Doc. 17-7, Fishman Decl, Ex.

2  K.)  Attached to Fischman's second declaration are copies of printouts showing continued use by

3  Defendants of COLDWELL BANKER® Marks and name on Facebook and other related social

4  networking sites.  (Doc. 25-1, Second Fishman Decl., Ex. A-C.)

5  Breach of Franchise Agreement

6  After Defendants entered into the Franchise Agreement they failed to pay franchise fees,

7  including royalty fees and national advertising fees, when due.  Section 13.3 of the Franchise

8  Agreement, entitled, "Termination after Opportunity to Cure," provides that Coldwell Banker,

9  shall also have the right to terminate this Agreement, effective immediately
   upon written notice of termination, if [the Defendants] after reasonable
10 notice and opportunity to cure (which need not be longer than 30 days):
   .   .   .
11 d.  Fails  .    .   .  to make payments of any amounts due [Coldwell Banker]
   for Royalties, Advertising Fees or any other amounts due [Coldwell Banker] or any of its
12 Related Parties under this Agreement, or any other agreement with Coldwell Banker or any
   of its Related Parties.

13 (Doc. 17-3, Bertet Decl., Ex. A, p. 23.)

14 On or about April 8, 2011, Coldwell Banker sent, via second day courier and first class mail,

15 an intent to terminate letter to Defendants stating that they were in material breach of the Franchise

16 Agreement, and that they had until May 11, 2011, to cure the default, specifically to pay the overdue

17 balance of $106, 628.53.  The letter advised Defendants that, should they fail to cure the defaults and

18 the franchise is terminated, Coldwell Banker would exercise its option to accelerate the balances of

19 the Promissory Note of $38,444.00.  (Doc. 17-3, Bertet Decl, Ex. D.)

20 Defendants failed to pay the royalty fees, national advertising fee and other fees owed to

21 Coldwell Banker and failed to cure the defaults discussed in the intent to terminate letter.

22 Accordingly, because of the failure of Defendants to pay franchise fees, Coldwell Banker exercised

23 its rights under Section 13 of the Franchise Agreement to terminate the Franchise Agreement.

24 **PROCEDURAL HISTORY**

25 On or about May 25, 2011, Coldwell Banker sent, via second day carrier and first class mail,

26 a Termination Letter to Defendants advising them that the Franchise Agreement with Coldwell

27 Banker was terminated effective May 27, 2011, for Defendants' failure to pay fees when due.

28 Defendants' account balance as of May 19, 2011, was $113,757.80 and Defendants owed Coldwell

4

Banker $28,833.00 for unbilled Development Note principal.  Coldwell Banker demanded payment of $142,590.80 by Defendants by June 10, 2011.  The May 25, 2011 Termination Letter also reminded Defendants of their obligations to immediately cease and desist further use of the COLDWELL BANKER® Marks.  (Doc. 17-3, Bertet Decl., Ex. E.)

On or about July 28, 2011, counsel for Coldwell Banker sent, via e-mail, certified and regular mail, a Demand Letter to Defendants stating that they owed $142,591.14 for, among other things, past due royalty and advertising fees.  (Doc. 17-5, Feybush Decl., Ex. G.)  On or about October 22, 2012, counsel for Coldwell Banker sent, via e-mail, certified and regular mail, a second Demand Letter to Defendants stating that they still owed $142,591.14 for, among other things, past due royalty and advertising fees.  (Doc. 17-5, Feybush Dec., Ex. H.)  On or about August 26, 2013, counsel for Coldwell Bank sent, via e-mail, certified and regular mail, a final Demand Letter to Defendants stating that they still owed $142,591.14 for, among other things, past due royalty and advertising fees.  (Feybush Decl, Ex. 1.)

Defendants failed to pay the royalty fees, national advertising fees and other fees owed to Coldwell Banker.  Coldwell Banker filed a complaint against Defendants DCP and Yee, as well as as against Defendant Lo, on October 10, 2013.  (Doc. 1.)  On November 14, 2013, Defendants DCP and Yee were served with summons and complaint by substituted service.  (Docs. 8, 9.)  On January 7, 2014, Coldwell Banker filed its proofs of service of the summons and complaint on Defendants DCP and Lee.  (Docs. 9 and 10.)

Defendants DCP and Yee did not file any responsive pleading to the complaint.  On January 15,2014, Coldwell Banker filed requests for entry of default against Defendants DCP and Yee.  (Docs. 12 and 13.)  On January 21, 2014, the court entered the default of Defendant DCP and Defendant Yee for failure to plead or otherwise defend the complaint against them.  (Doc. 14.)  On February 6, 2014, Coldwell Banker filed a request for dismissal without prejudice as to Defendant Louie T. Lo pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.  (Doc. 15.)  On February 7, 2014, the court dismissed Louie T. Lo without prejudice and ordered Coldwell Banker to file the instant motion within 60 days.  (Doc. 16.)

**United States District Court**
For the Northern District of California

On April 8, 2014, Coldwell Banker filed its Motion for Default Judgment.  (Doc. 17.)  In its motion, Coldwell Banker seeks judgment against both Defendants, jointly and severally, in the amount of $187,313.02, plus attorney's fees and costs in the amount of $11,156.15, for a total judgment of $198,469.17, plus interest at the legal rate until the judgment is paid in full.  Coldwell Banker also seeks entry of a permanent injunction against Defendants to permanently enjoin them from further use of the COLDWELL BANKER® Marks.

On May 12, 2014, the undersigned entered an order requiring Coldwell Banker to provide further briefing on its Motion for Default Judgment.  (Doc. 20.)  Specifically, the undersigned ordered Coldwell Banker to address each of the factors the court must consider in deciding to grant default judgment, and also to provide a detailed explanation of the attorney's fees accrued in this case.  (*Id.*)  Coldwell Banker provided filed its supplemental brief on May 21, 2014.  (Doc. 21.)

The matter was heard on July 22, 2014.  (Doc. 23.)  During the hearing, the court informed Plaintiff's Counsel of several areas in which further briefing was required.  *Id.*  Coldwell Banker filed its supplemental brief on July 29, 2014.  (Doc. 25.)  Also on July 29, 2014, Coldwell Banker filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a) of the fifth, sixth and tenth claims for relief.[2]  (Doc. 27.)

## LEGAL STANDARDS

After entry of default, the court may enter default judgment.  Fed.R.Civ.P. 55(b).  The decision to grant or deny default judgment is within the court's discretion.  *Alan Neuman Prods., Inc., v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  The court first must examine its jurisdiction over both the subject matter and the parties.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The court also "must assess the adequacy of the service of process on the party against whom default is requested."  *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

Once the court determines that jurisdiction exists and that service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment:

---

[2]Although Coldwell Banker attached a proposed order to its notice of voluntary dismissal, no order from the court is required to dismiss the claims for relief under these circumstances.  Federal Rule of Civil Procedure 41(a)(1)(A)(i).

United States District Court

For the Northern District of California

(1) the possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon default, all factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc., v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Financial Group*, 599 F.2d 57, 560 (9th Cir. 1977)). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c).

## DISCUSSION

**Subject Matter Jurisdiction and Personal Jurisdiction**

The complaint alleges trademark infringement by Defendants in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125. The complaint further alleges federal trademark counterfeiting in violation of 15 U.S.C. § 1114(a)(1). Each of these claims establishes jurisdiction in the federal court. *See* 28 U.S.C. § 1388(a) ("[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to .   .   . trademarks."). More generally, district courts also have original jurisdiction to hear civil cases arising under the laws of the United States. 28 U.S.C. § 1331. The district court therefore has subject jurisdiction over these claims because they arise under federal law.

The court may properly exercise subject matter jurisdiction over Coldwell Banker's remaining common law or state law claims, which arise from the same set of facts as the federal claims. *See* 28 U.S.C. § 1367 ("in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

The district court also may properly exercise personal jurisdiction over the parties. Coldwell Banker is a California limited liability company with its principal place of business in the State of

7

California.  Defendant DCP is a California corporation, formerly doing business as Coldwell Banker DCP & Associates, at a location within the venue of this court.  Coldwell Banker states on information and belief that Defendant Lee resides in San Mateo County, California.  Complaint, 2:25-26.  All parties are thus subject to personal jurisdiction in any court located in California.

**Service of Process**

Service was adequate to perfect the district court's authority to exercise personal jurisdiction over Defendants.  *See* Federal Rule of Civil Procedure 4(k)(1)(A).  Following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located is an adequate means of serving process on that individual.  *See* Fed.R.Civ.P. 4(e)(1).  The proofs of service Coldwell Banker filed with the court establish that a professional process server served Defendants DCP and Yee with the summons and complaint by substituted service.  (Docs. 8 and 9.)  Further, there is no indication that Defendant Yee is a minor, an incompetent person, or a member of the military.  (Feybush Decl., 3:7).

**Choice of Law**

Courts generally apply the law of the forum in determining choice-of-law issues.  *See Klaxon Co. v. Stentor Electric Mfg.*, *Co.,* 313 U.S. 487, 496 61 S.Ct. 1020, 1021 (1941) ("[t]he conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. [Footnote omitted.]  Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." )  Under California law, where a valid choice of law provision governs an agreement, the choice of law provision also governs all claims arising out of or related to that agreement.  *See Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 470 (Cal. 1992).  This is, a valid choice-of-law clause, which provides that a specified body of law "governs" the "agreement" between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationship it creates." *Id.*

The Franchise Agreement contains a choice of law provision stating that: "[t]his Agreement and the relationships among the parties shall be governed by, and construed in accordance with, the

United States District Court

For the Northern District of California

laws of the state of New Jersey; provided that the New Jersey Franchises Practices Act shall not apply to any COLDWELL BANKER Franchised brokerage office whose office(s) is/are located outside the State of New Jersey." (Doc. 17-3, Exhibit A at 16.4). Coldwell Banker asserts that it is undisputed that New Jersey has a substantial relationship to the transactions at issue, as it is a limited liability company with its principal place of business and its headquarters in New Jersey. Coldwell Banker contends that because the Franchise Agreement contains a choice-of-law provision specifying that New Jersey law "governs" the Franchise Agreement and New Jersey has a substantial relationship to the transactions at issue, New Jersey law is applicable to all of the parties' state law claims. The court concurs in regard to the state law claims which now exist in the case, after the dismissal of the California state law claims.

**The *Eitel* Factors**

    a.      **Possibility of Prejudice**

        The complaint alleges that Defendants failed to pay funds owed to Coldwell Banker pursuant to the Franchise Agreement and the Guaranty they entered into with Coldwell Banker. Coldwell Banker would be prejudiced absent entry of default judgment because it would be left without a remedy to collect the funds owed. *See, e.g., U.A. Local No. 467 Trust Fund v. Hydra Ventures, Inc.*, No. C-12-3746 EMC, 2013 U.S. Dist. LEXIS 34931, at *6 (N.D. Cal. Mar. 13, 2013). The first *Eitel* factor thus favors default judgment.

    b.      **Merits of the Claims and Sufficiency of the Complaint**

        The second and third *Eitel* factors address the sufficiency of Coldwell Banker's complaint and probability of success on the merits of its underlying claims. Coldwell Banker's first through sixth claims for relief are based on violations of federal, state and common law trademark law. Coldwell Banker has alleged that after the Franchise Agreement was terminated, and despite being sent multiple cease and desist letters, Defendants continued the unauthorized use of COLDWELL BANKER® Marks. As discussed above, Coldwell Banker has offered evidence showing that Defendants continued to use COLDWELL BANKER® Marks, including yard signage depicting the COLDWELL BANKER® Marks and name, MLS listings and marketing materials using the

**United States District Court**

For the Northern District of California

1    COLDWELL BANKER® Marks, and stationary and business cards reflecting the COLDWELL

2    BANKER® name.

3    First Claim for Relief - Statutory Trademark Infringement Against All Defendants

4        Coldwell Banker alleges that Defendants' actions in continuing to utilize, display and

5    identify themselves with the COLDWELL BANKER® Marks after the termination of the Franchise

6    Agreement, without the consent of Coldwell Banker, constitutes trademark infringement in violation

7    of the Lanham Act, 15 U.S.C. § 1114.  Section 1114(1) provides in part that "[a]ny person who

8    shall, without the consent of the registrant - -  (a) use in commerce any reproduction, counterfeit,

9    copy, or colorable imitation of a registered mark in connection with the sale, offering for sale,

10   distribution, or advertising of any goods or services on or in connection with which such use is

11   likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the

12   registrant for the remedies hereinafter provided."  The use of a trademark which is unauthorized and

13   which has the effect of misleading the public to believe that the user is approved by the registrant

14   can constitute trademark infringement. *Burger King v. Mason*, 710 F.2d 1480, 1494 (11th Cir. 1983)

15   (finding that franchisee's post-termination use of franchisor's trademark is cognizable under the

16   Lanham Act.)

17       Coldwell Banker has presented evidence that it properly terminated the Franchise Agreement

18   with Defendants, and that Defendants continued to used the COLDWELL BANKER® Marks after

19   the termination.  (Doc. 17-7, Fishman Decl., Ex. K; Doc. 25-1, Second Fishman Decl., Ex. A-C.)

20   This was in violation of the terms of the Franchise Agreement.  (Doc. 71-3, Bertet Decl., Ex. A, p.

21   23-24.)

22       Coldwell Bank has also demonstrated that Defendants' use of its mark is likely to cause

23   confusion.  The Ninth Circuit considers the following eight non-exclusive facts in determining the

24   likelihood of confusion: (1) similarity of the marks; (2) strength of the mark; (3) proximity or

25   relatedness of the goods; (4) evidence of actual confusion; (5) marketing channels used; (6) type of

26   goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in

27   selecting the mark; and (8) likelihood of expansion of the product lines. *Dr. Seuss Enterprises L.P.*

28   *v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1404 (9th Cir. 1997).

**United States District Court**
For the Northern District of California

1    Coldwell Banker argues that the COLDWELL BANKER® Marks are very strong.  It claims

2  that it has expended hundreds of thousands of dollars to develop goodwill in the marks and that they

3  are indisputably among the most well-recognized trademarks in the United States.  The second

4  factor in the confusion analysis weighs in Coldwell Banker's favor.

5    The services offered by Defendants are identical to that offered by Coldwell Banker: real

6  estate brokerage services.  Further, Coldwell Banker argues that the marketing channels used by

7  Coldwell Banker and Defendants are the same, including the use of the Internet.  Thus, the third and

8  fifth factors in the confusion analysis weigh in favor of Coldwell Bank.

9    Despite the receipt of numerous termination letters from Coldwell Banker and numerous

10  letters advising that Defendants must immediately cease and desist further unauthorized use of the

11  COLDWELL BANKER® Marks pursuant to the express terms of the Franchise Agreement,

12  Defendants continued to utilize the COLDWELL BANKER® Marks without authorization.  "When

13  the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that

14  the defendant can accomplish his purpose: that is, that the public will be deceived." *Entrepreneur*

15  *Media, Inc. v. Smith,* 279 F.3d 1135, 1148 (9th Cir.  2002).  The seventh factor in the confusion

16  analysis weighs in favor of Coldwell Banker.

17    "The district court's primary task, in determining infringement of registered trademarks, is to

18  make the factual determination whether the public is likely to be deceived or confused by the

19  similarity of the marks as to source, relationship or sponsorship." *Eclipse Assocs. Ltd. V. Data Gen.*

20  *Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990).  Here, Defendants continue to use the well-recognized

21  COLDWELL BANKER® Marks after the termination of the Franchise Agreement, offering the

22  same services as those offered by Coldwell Banker and utilizing the same marketing channels.

23  The undersigned thus finds that the public is very likely to be confused, if not actually deceived, by

24  Defendants' use of the COLDWELL BANKER® Marks.  The undersigned concludes under the

25  second and third *Eitel* factors that  Coldwell Banker has demonstrated a substantial likelihood of

26  success on the merits on the claim for statutory trademark infringement.

27  //

28  //

11

Second Claim for Relief - Common Law Trademark Infringement Against All Defendants

The same "likelihood of confusion" standard applied to Coldwell Banker's statutory trademark infringement claim is applied to its common law trademark infringement claim. *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F.Supp.2d 358, 374 (D.N.J. 2002) ("the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for . . . claims of trademark infringement and unfair competition under New Jersey statutory and common law"). Thus, for the reasons set forth above, the undersigned finds under the second and third *Eitel* factors, Coldwell Banker has demonstrated a substantial likelihood that it will prevail against Defendants on its common law trademark infringement claim.

Third Claim for Relief - Federal Unfair Competition Against All Defendants

For the same reasons that the undersigned found that Coldwell Banker will prevail on its statutory and common law trademark infringement claims, the court also finds that Coldwell Banker will prevail on its federal unfair competition claim under the Lanham Act, 15 U.S.C. § 1125. *See J & J Snack Foods, Corp.*, 220 F.Supp.2d at 374 ("the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act").

Fourth Claim for Relief - Federal Trademark Counterfeiting Against All Defendants

Coldwell Banker alleges that the unauthorized use of the COLDWELL BANKER® Marks by Defendants constituted trademark counterfeiting pursuant to 15 U.S.C. § 1114(a)(1), which provides as follows:

(1) Any person who shall, without the consent of the registrant--
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1127 provides in part that, "[a] 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

The court finds that Coldwell Banker has provided no controlling authority demonstrating that Defendants' actions constituted trademark counterfeiting. *See Kerr Corp. v. Tri Dental, Inc.*,

United States District Court

For the Northern District of California

1   2013 WL 990532 (C.D.Cal.) (trademark counterfeiting found where products were found not to be

2   manufactured by Kerr, but bore spurious copies of Kerr's protected trademarks); *State of Idaho*

3   *Potato Comm'n v. G & T Terminal Packaging, Inc*., 425 F.3d 708 (9th Cir. 2005) (unauthorized use

4   of commission's "Idaho" certification marks on bags of genuine Idaho potatoes found to be

5   counterfeiting); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185 (6th Cir. 1997)

6   (holding that former franchisee's continued use of plaintiff's trademark without authorization was

7   not the use of a counterfeit mark); *General Elec. Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989)

8   (finding that counterfeiting includes the use of a genuine mark on an unauthorized product); *but see*

9   *Century 21 Real Estate, LLC v. Destiny Real Estate Props*., 2011 WL 6736060 (N.D.Ind.) (after

10  reviewing conflicting authority, district court found that continued use of a formerly authorized mark

11  by a hold-over franchisee constituted the use of a counterfeit mark).

12        Coldwell Banker alleges that Defendants improperly used its genuine trademark - - no

13  allegation is made of the use of a "reproduction, counterfeit, copy, or colorable imitation of a

14  registered mark." *See* 15 U.S.C. § 1114 (1)(a).  No claim is made that Defendants created or

15  manufactured any Coldwell Banker materials since the termination of the Franchise Agreement.

16  Under these circumstances and in light of the lack of controlling authority on the issue, the court

17  finds in analyzing the second and third *Eitel* factors that Plaintiff has not demonstrated that it is

18  likely to prevail on the merits of this claim for relief.

19  Fifth Claim for Relief - California Statutory Trademark Infringement Against All Defendants, Sixth

20  Claim for Relief - California Unfair Competition Against All Defendants

21        In the order requiring further briefing, the undersigned specifically directed Coldwell Banker

22  to "address the second and third *Eitel* factors in detail, explaining how the facts alleged in the

23  complaint support each of the eleven claims for relief."  (Doc. 20, 2:2-4.)  The undersigned explained

24  that Coldwell Banker "shall discuss the elements of each of the claims and how those elements are

25  met by the alleged facts." *Id*. at 2:4-5.

26        The supplemental brief filed May 21, 2014, did not contain a discussion of the fifth claim for

27  relief  based on California statutory trademark infringement or the sixth claim for relief based on

28

United States District Court

For the Northern District of California

California Unfair Competition.  The Motion for Default Judgment does not request damages for either the fifth or the sixth claims for relief.

At the hearing on July 22, 2014, the court asked Counsel to provide further briefing clarifying Coldwell Banker's stance on the fifth and sixth claims for relief.  On July 29, 2014, Coldwell Banker filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a) of these two claims for relief.

Seventh Claim for Relief - Breach of Contract Against Defendant DCP

Under New Jersey law, a claim for breach of contract requires proof of "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico v. Home Depot*, 507 F.3d 188, 203 (3rd Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc*., 210 F.Supp.2d 552, 561 (D.N.J.2002), *aff'd*, 342 F.3d 191 (2003) *cert. den.,* 540 U.S. 1178 (2004)).

Under the facts alleged, Coldwell Banker establishes each of these elements with regard to Defendant DCP's  breach of the Franchise Agreement.  Coldwell Banker entered into the Franchise Agreement with Defendant DCP with an effective date of February 16, 2004.  (Doc. 17-2, Bertet Decl., ¶ 4.)  Pursuant to the Franchise Agreement, Coldwell Banker agreed to grant a non-exclusive license to Defendant DCP to utilize COLDWELL BANKER® Marks and the COLDWELL Banker®System in exchange for Defendants agreeing to pay certain fees.  *Id*. at ¶ 7.  Defendant DCP breached the Franchise Agreement by failing to timely pay amounts owed under the Franchise Agreement, including royalty fees and national advertising fees.  *Id*. at ¶ 8, 10.  Coldwell Banker performed its obligations under the terms and conditions of the Franchise Agreement.  Complaint, ¶ 57.   The court finds under the second and third *Eitel* factors that Coldwell Banker has demonstrated a substantial likelihood of success on this claim for relief based on breach of contract.

Eighth Claim for Relief - Breach of Guaranty Against Defendant Yee

Coldwell Banker alleges that Defendant Yee entered into a separate Guaranty of Payment and Performance.  It alleges that Defendant Yee personally guaranteed the payment and performance of all of DCP's obligations under the Franchise Agreement.  *See* (Doc. 17-3, Bertet Decl., Ex. A, p. 34.). A guarantor is liable under an agreement and guaranty to the extent that the principal is liable.

14

United States District Court

For the Northern District of California

*National Westminister Bank N.J. V. Lomker*, 277 N.J.Super. 491, 498-99 (App.Div. 1994).  Coldwell Banker alleges that as a result of his execution of the Guaranty, Defendant Yee is jointly and severally liable for all of Defendant DCP's debts to Coldwell Banker.  Coldwell Banker provides a copy of the Guaranty as Exhibit A to the Declaration of Jacqueline Bertet.  (Doc. 17-3, Ex. A, p. 35.)  The undersigned finds under the second and third *Eitel* factors that Coldwell Banker has demonstrated a substantial likelihood of success on this claim for relief.

Ninth Claim for Relief - Accounting

Coldwell Banker alleges that Defendants owe additional sums pursuant to the Franchise Agreement and Guaranty, based on sales of real estate not reported but for which a royalty fee and NAF fee is due and owing.  However, Coldwell Banker is unable to ascertain the full amount owed without an accounting or audit of the books and records.  It alleges that the additional amounts owed are within Defendants' knowledge as these amounts are based on transactions in which Defendants participated.  Coldwell Banker alleges that although it has demanded an accurate accounting of any additional sales transactions or amounts that may be owed to it, Defendants have refused to provide this information.  The undersigned finds under the second and third *Eitel* factors that Coldwell Banker has demonstrated a substantial likelihood of success on the merits of this claim.

Tenth Claim for Relief - Account Stated

In its complaint and in its further briefing filed May 21, 2014, Coldwell Banker asserts a claim against all Defendants based on the theory of account stated.  An "account stated" is an agreement between the parties that the debt is valid and due.  *Harris v. Merlino*, 137 N.J.L. 717, 720 (1948); *George S. May Int'l Co. v. Thirsty Moose, Inc.,* 796 N.Y.S.2d 196, 197 (N.Y. App.Div. 2005).  Coldwell Banker alleges that within the last four years, an account was stated in writing by and between it and Defendants wherein Defendants owed Coldwell Banker $142,591.14. It further alleges that no part of this sum has been paid, although demand has been made and the entire sum is now due and owing, along with interest.

At the hearing on July 22, 2014, the court asked Coldwell Banker to provide further briefing addressing the issue of acknowledgment of the debt by Defendants.  *See Harris*, 137 N.J.L. at 720 (admission of the correctness of the amounts charged for items purchased at a sale and a $50 payment

**United States District Court**

For the Northern District of California

made on account found to be implied promise to pay the balance, and balance found to amount to an account stated)*; George S. May Int'l Co.*, 796 N.Y.S.2d at 197 ("[p]laintiff also established a prima facie case for an account stated in that the invoices it produced were signed and accepted by defendant's president without objection and there is proof that defendant remitted a partial payment to plaintiff."). On July 29, 2014, Coldwell Banker voluntarily dismissed the tenth claim for relief.  (Doc. 27)

Eleventh Claim for Relief - Quantum Meruit

Coldwell Banker alleges that within the last four years, it provided services to Defendants which included non-exclusive licenses to use the COLDWELL BANKER® Marks, the COLDWELL Banker® System, and other proprietary information and property of Coldwell Banker.  It alleges that Defendants knew that these services were being provided with the expectation of payment for the same and accepted, used, and enjoyed the services provided by Coldwell Banker.

To recover under quantum meruit, a plaintiff must establish: (1) the services were performed in good faith; (2) the services were accepted by the person for whom they were intended; (3) the plaintiff reasonably expected compensation for performing the services, and (4) the value of the services is reasonable.  *Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (2002) (quoting *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir.1994).  The undersigned finds under the second and third *Eitel* factors, Coldwell Banker has demonstrated a substantial likelihood of prevailing on this claim.

**c.    The sum of money at stake**

When the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions and supported by proper documentation and evidence in the record, default judgment is appropriate.  *See Truong Giang Corp. v. Twinstar Tea Corp*., No. 3:06-CV-03594 JSW, 2007 U.S. Dist. LEXIS 100237, at *32-*34 (N.D. Cal. March 22, 2007) .

In its motion for default judgment, Coldwell Banker has submitted the Declaration of Jacqueline Bertet, Senior Director of Real Estate Financial Services for Coldwell Banker Real Estate LLC.  (Doc. 17-2.) Ms. Bertet declares that as of March 25, 2014, Defendants owed Coldwell Banker $132,980.02 in unpaid franchise fees, including royalty fees and national advertising fees, and the unpaid balance of the promissory note.  (*Id*. at 5.)   Coldwell Banker subsequently explains in its

United States District Court

For the Northern District of California

1    supplemental brief filed July 29, 2014, that it does not seek recovery on the $28,833.00 Promissory

2    Note.   (Doc. 25, 9:3-5.)

3          Ms. Bertet declares that Coldwell Banker's actual damages during the time period Defendants

4    wrongfully continued to use the Coldwell Banker Marks after termination were its lost franchise fees

5    for the office Defendants continued to operate as if it were an authorized franchise until at least

6    October 2012.  The Franchise Agreement expressly provides for a minimum NAF monthly

7    contribution Defendants were to provide to Coldwell Banker of $500.  (Doc. 7-1, ¶ 15-16.)

8          In addition, Coldwell Banker has incurred attorneys' fees and costs in the amount of

9    $17,701.07.  (Doc. 21-1, Feybush Declar., 2:10-14.; Doc. 25-2, Garner Declar., 2:10-17.)   Attorneys'

10   fees and costs are provided for in Section 16.2 of the Franchise Agreement.  (Doc. 17-2 at ¶ 17.)

11         The damages Coldwell Banker seeks are permitted by law, supported by proper

12   documentation, and reasonably proportionate to the harm caused by Defendants' breach of the

13   Franchise Agreement and trademark infringement.  This *Eitel* factor weighs in favor of default

14   judgment.

15             **d.        Possibility of Dispute Concerning Material Facts**

16         Although Defendants have neither filed an answer nor opposed the motion for default

17   judgment, the terms of the Franchise Agreement and Guaranty and the declarations of Bertet and

18   Feybush demonstrate that the possibility of dispute concerning the material facts of the complaint is

19   small.  *See* Docs. 1,7, 17-2, 17-4, 21-1.  This *Eitel* factor weighs in favor of default judgment.

20             **e.        Whether Default was Due to Excusable Neglect**

21         Coldwell Banker filed its complaint against Defendants on October 10, 2013.  (Doc. 1)  On

22   November 14, 2014, a professional process server served Defendants DCP and Yee with the

23   summons and complaint by substituted service.  (Docs. 8 and 9.)  Defendants did not file a responsive

24   pleading to the complaint, oppose the motion for default judgment, or otherwise appear in this action.

25   There are no facts before the court indicating that Defendants failure to appear and defend this case is

26   attributable to excusable neglect.  This *Eitel* factor weighs in favor of default judgment.

27   //

28   //

**United States District Court**
For the Northern District of California

### f. Policy of Deciding Cases on the Merits

The Federal Rules favor a decision on the merits whenever possible.  (*Eitel*, 782 F.2d at 1472), and thus this factor by definition weighs against granting default judgment.  But where a defendant fails to respond to a complaint, a decision on the merits is impractical, if not impossible.  Ultimately, the preference to decide cases on the merits does not preclude a court from granting default judgment.  *See, e.g., PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002).

**Damages**

In its motion for default judgment, Coldwell Banker requests that the court enter default judgment in favor of it and against Defendants DC Property & Loans, Inc., and Jose C. Yee, jointly and severally, in the amount of $187,313.02 for "past due franchise fees and damages for trademark infringement," plus attorneys' fees and costs.  (Doc. 17-1, Motion for Default Judgment, 14:12-13.)

In its supplemental brief filed July 29, 2014, Coldwell Banker modifies its request for damages, stating that it seeks total damages in the amount of $155,848.09.  Specifically, it seeks the following: 1) breach of contract and breach of guaranty damages (damages for royalty and NAF fees owed but not paid) in the amount of $104,147.02;  2) damages for trademark infringement in the amount of $8,500.00; 3)  treble damages for trademark infringement in the amount of $25,500.00; and 4) attorneys fees and costs in the amount of $17,701.07.  (Doc. 25, 9:20-25.)

Coldwell Banker provides evidence that as of March 25, 2014, Defendants owe $132,980.02 for past due franchise fees and the entire unpaid balance of the promissory note.  (Doc. 17-2, Bertet Decl., 5:20.)  As described above, "franchise fees" fees include royalty fees and advertising fees under the express terms of the Franchise Agreement and Guaranty.  (Doc. 17-2, Bertet Decl., ¶ 7.)  Coldwell Banker clarifies in its supplemental brief filed July 29, 2014, that it does not seek currently seek relief for breach of the promissory note.   (Doc. 25:9:3-5.)  Thus it seeks only $104,147.02 in franchise fees.  The undersigned recommends that the district court award Coldwell Banker these damages.

In regard to damages for trademark infringement, Coldwell Banker seeks actual damages for the time that Defendants refused to cease use of the COLDWELL BANKER® Marks after being

advised by Coldwell Banker of the termination of the Franchise Agreement.  Specifically, it seeks damages to equal its lost franchise fees for the office that Defendants continued to operate from at least May 27, 2011, the date the termination of the Franchise Agreement was effective pursuant to the Termination Letter, to October 22, 2012, the date of the second demand letter.  (Doc. 17-2, Bertet Decl., 5-6.   The Franchise Agreement has a provision setting minimum NAF contributions Defendants were to provide to Coldwell Bank at $500.  (Doc. 17-2, Bertet Decl., Exhibit 1, ¶ 8.2.)  Coldwell Banker seeks, at a minimum, such damages for seventeen months, equaling $8,500.  (Doc. 17-2, Bertet Decl., ¶ 16.)

Further, Coldwell Banker seeks damages at triple that amount, or $25,500.00, based on Defendants' willful infringement, citing 15 U.S.C. § 1117(b) and *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).  The Ninth Circuit explained as follows:

> The damage award for trademark infringement, standing alone, was also appropriate. The damages provision of the Lanham Act states:
>
> > When a violation of any right of the registrant of a mark ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.
>
> 15 U.S.C. § 1117(a). If the violation consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark," section 1117(b) instructs that the court "shall" treble the damages.

*Nintendo of America*, 40 F.3d at 1010.  Coldwell Banker argues that treble damages are appropriate in this case because it is beyond dispute that Defendants willfully infringed its marks.

In a case in which an operator of a skydiving business brought an action against a third party advertising and booking service for trademark infringement under the Lanham Act, the Ninth Circuit explained the proper analysis for the award of treble damages:

> The plain language of the Lanham Act permits a district court, in its discretion, to enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty." *Id.* (emphasis added). Thus, although a judge or jury may award up to triple the amount of lost profits, actual damages and costs to compensate a mark holder, the Lanham Act has been construed to expressly forbid the award of damages to punish an infringer. *Id.*; *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir.1994).

19

United States District Court

For the Northern District of California

1

2

3

4

5

            The inquiry before us is not whether SKYRIDE's willful infringement justified the
district court's enhancement of Skydive Arizona's actual damages. Rather, we must decide
whether the district court abused its discretion in enhancing Skydive Arizona's actual damages
to punish SKYRIDE. In a Lanham Act case, to penalize defendants for "opprobrious conduct"
is an abuse of discretion. *Jurgens v. McKasy*, 927 F.2d 1552, 1564 (Fed.Cir.1991) (finding the
district court abused its discretion under the Lanham Act when it cited both deterrence and
penalizing rationales for trebling damages against a willful infringer). Indeed, "enhancement
[of damages] is only available to ensure that the plaintiff receives compensation." *BASF
Corp.*, 41 F.3d at 1096.

6

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012).

7

8

9

10

11

12

13

14

15

            Coldwell Banker does not argue that treble damages are required to compensate it for

Defendants' infringement; it simply argues that it should be awarded treble damages because

Defendants acted in "deliberate defiance of the Franchise Agreement" in that they "continued to use

Coldwell Banker's trademarks for over a year after notification of the termination of the Franchise

Agreement and the cease and desist letters."  (Doc. 25, Supplemental Briefing filed July 29, 2014,

5:25-27.)  This is insufficient to justify the award of treble damages under the Ninth Circuit authority

cited above.  Accordingly, the undersigned finds that Coldwell Banker has not demonstrated a basis

for treble damages under the Lanham Act and recommends that the district court award only actual

damages in the amount of $8,500.00 for trademark infringement.

16

**Injunctive Relief**

17

18

19

20

21

22

23

24

25

26

27

28

            In its complaint, Coldwell Banker seeks "a permanent injunction against Defendants'

infringement through the use of COLDWELL BANKER® Marks and identification of Defendants

with Plaintiff, preventing any future infringement and preventing any future unfair competition."

(Doc. 1, Complaint, 13:15-17.)  In support of its Motion for Default Judgment, Coldwell Banker

asserts that "Defendants continue to use the COLDWELL BANKER® Marks without payment to, or

authorization from, Coldwell Banker."  (Doc. 17-1, Memorandum of Points and Authorities, 10:25-

26.)  Coldwell Banker has  provided evidence that Defendants are continuing to use COLDWELL

BANKER® Marks in connection with yard signage, MLS listings and marketing material, stationary

and business cards, and on Facebook, Yelp and City Squares.  (Doc. 17-7, Fishman Decl., Ex. K.;

Doc. 25-1, Second Fishman Decl., Ex. A-C.)  Coldwell Banker concludes that based on this usage of

COLDWELL BANKER® Marks, it has ample evidence that it will suffer irreparable harm if

1  Defendants are not immediately and permanently enjoined from further unauthorized use of the

2  marks in violation of the Franchise Agreement.

3      The United States Supreme Court has explained the standard for a permanent injunction as

4  follows:

5          According to well-established principles of equity, a plaintiff seeking a permanent injunction
           must satisfy a four-factor test before a court may grant such relief. A plaintiff must
6          demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law,
           such as monetary damages, are inadequate to compensate for that injury; (3) that, considering
7          the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;
           and (4) that the public interest would not be disserved by a permanent injunction.

8

9  *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 391-92 126 S.Ct. 1837 (2006).)  Because there is no

10 adequate remedy at law for the injury caused by continuing infringement, injunctive relief is the

11 remedy of choice for trademark infringement.  *Century 21 Real Estate Corp., v. Sandlin*, 1175, 1180

12 (9th Cir. 1988).

13     Defendants' actions in this case warrant the issuance of a permanent injunction.  Defendants

14 have blatantly continued to use COLDWELL BANKER® Marks to advertise and market their

15 business after  their authorization to do under the Franchise Agreement ended.  The public has an

16 interest in the issuance of a permanent injunction against Defendants to prevent confusion and

17 deception.  Finally, the equities weigh totally in favor of Coldwell Banker against the infringing

18 Defendants.

19 **Attorneys' Fees**

20      Coldwell Banker seeks an award of attorneys' fees and costs in the amount of $17,701.07

21 pursuant to the terms of the Franchise Agreement and Section 35(a) of the Lanham Act.  (Doc. 25-2,

22 Decl. of Lisa Garner, 2:17.)  The Franchise Agreement provides at paragraph 16.2 that, "[t]he

23 prevailing party in any judicial or arbitration proceeding between the parties shall be awarded its

24 costs and expenses, including reasonable attorneys' fees."  (Doc. 7-1.)  Coldwell Banker is the

25 prevailing party in this action, thus it is entitled to costs and expenses under the Franchise

26 Agreement.  The undersigned therefore finds it unnecessary to reach the issue of its entitlement to

27 statutory fees.

28

United States District Court

For the Northern District of California

The usual hourly rates billed for services to Coldwell Banker are $165 for paralegals, $300 per hour for associates, and $365 per hour for partners.  (Doc. 25-2, Decl. of Lisa Garner, 2:2.) Coldwell Banker has submitted copies of invoices, documenting the attorney's fees and costs it seeks. (Doc. 17-4, 21-1, Declarations of Hillary E. Feybush.) The court finds that the attorney's fees and costs sought by Coldwell Banker are reasonable and recommends that the district court grant Coldwell Banker $17,701.07 in costs in expenses pursuant to paragraph 16.2 of the Franchise Agreement.

### CONCLUSION

Based on the foregoing, the court HEREBY RECOMMENDS as follows:

1)	that the district court grant Coldwell Banker's Motion for Default Judgment on the first, second, third, seventh, eight, ninth, and eleventh claims for relief;

2)	that the district court direct the Clerk to enter judgment for Coldwell Banker on the first, second, third, seventh, eight, ninth, and eleventh claims for relief;

3)	that the district court award Coldwell Banker damages in the amount of $112,647.02

4)	that the district court award  Coldwell Banker attorneys' fees and costs in the amount of $17,701.07;

5)	that the district court award Coldwell Banker a total of $130,348.09 plus interest at the statutory rate from the time of entry of judgment;

6)	that the district court issue an injunction, permanently enjoining Defendants from the use of the COLDWELL BANKER® Marks.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the district court's order.

IT IS SO ORDERED.

Dated: August 14, 2014

NANDOR J. VADAS
United States Magistrate Judge